**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SILIAN VENTURES LLC, | |
| *Plaintiff*, | |
| v. | Case No. 18-cv-_____ |
| THE BANK OF NEW YORK MELLON, in its individual capacity and as Trustee for the Covered Trusts, | **COMPLAINT** |
| *Defendant*. | |

Plaintiff Silian Ventures LLC ("**Silian**") files this action for declaratory judgment and breach of contract against Defendant The Bank of New York Mellon ("**BNY**"), in its individual capacity and its capacity as trustee ("**Trustee**") of 156 residential mortgage-backed securities ("**RMBS**") trusts identified in **Appendix A** hereto (the "**Covered Trusts**").

1.     This action concerns a dispute over the proper calculation of interest payments to certain interest-only ("**IO**") senior certificates issued by the Covered Trusts and owned by Silian. Silian seeks to have these interest payments calculated in a manner that complies with the clear terms of pooling and servicing agreements ("**PSAs**") governing the Covered Trusts, avoids attributing inconsistent meanings to key terms under the PSAs, and preserves the intended structure and operation of the Covered Trusts.  The Trustee, however, has been calculating the interest payments in a manner that is not faithful to the PSA's plain language.  It has been applying the same term, "Mortgage Rate," in two diametrically opposed ways to perform a single calculation—an approach that violates the basic principles of contract interpretation.  The Trustee has refused to correct its calculations or otherwise seek judicial instruction, requiring Silian to initiate this action.

1

2.      The Covered Trusts are RMBS trusts that sold certificates to investors and used the proceeds to acquire a pool of mortgage loans.  The certificates sold by the Covered Trusts are issued in different classes, each with different priorities and corresponding rights relative to one another.  The Covered Trusts receive principal and interest payments from borrowers on the underlying mortgage loans and use this cash flow to pay principal and interest to certificateholders. Holders of the IO senior certificates at issue in this case receive interest payments calculated based on a formula set forth in the PSAs, but do not receive principal payments.

3.      To Silian's understanding, most of the PSA provisions governing the interest rate paid to the IO senior certificates are not disputed by the parties to this action:

- *First*, the parties agree that IO senior certificates are entitled to interest payments each month equal to the "Class Optimal Interest Distribution Amount."

- *Second*, they agree that these interest payments are given first priority in the distribution waterfall—meaning that they are paid from available funds before all other payments.

- *Third*, they agree that the Class Optimal Interest Distribution Amount for the IO senior certificates is calculated by multiplying a defined rate, called the "Pass-Through Rate," by a defined amount, called the "Notional Amount."

- *Fourth*, they agree that the "Notional Amount" equals the principal balance of a subset of the mortgage loans owned by the Covered Trusts called "Non-Discount Mortgage Loans," which are defined as Mortgage Loans bearing interest above a specified rate set forth in each of the PSAs.

- *Fifth*, they agree that Non-Discount Mortgage Loans are identified by reference to their "Mortgage Rate," and the "Adjusted Net Mortgage Rate" derived therefrom.

- *Sixth*, and critically, they agree that the relevant Mortgage Rate used in identifying Non-Discount Mortgage Loans is the unmodified rate of interest that appeared in the original mortgage note evidencing those loans.  This Complaint refers to this rate as the "**Original Rate**."

4.      The parties dispute, however, one particular aspect of calculating the Class Optimal Interest Distribution Amount.  Specifically, the Pass-Through Rate component of that calculation is determined, in part, by using the Mortgage Rate.  The parties' differing interpretations of

Mortgage Rate is at the core of this dispute.  It is Silian's position that the Mortgage Rate that should be used to determine the Pass-Through Rate is the Original Rate—*i.e.,* the annual rate of interest as reflected in the original mortgage note. The Trustee's approach, by contrast, interprets the term Mortgage Rate, when used in calculating the Pass-Through Rate, as an interest rate adjusted for forbearance agreements or other modifications to the underlying mortgage loans that occurred after the Covered Trusts were issued (collectively, "**Rate Modifications**").   This Complaint refers to the interest rate, taking account of Rate Modifications, as the "**Modified Rate**."

5.     Silian's interpretation is consistent with the plain terms of the PSAs, which define the Mortgage Rate as the rate of interest appearing in the "[t]he original executed note or other evidence of indebtedness evidencing the indebtedness of a Mortgagor under a Mortgage Loan." And the "original executed note" obviously cannot include Rate Modifications that occurred after the note was executed.

6.     The Trustee's interpretation, on the other hand, cannot be reconciled with the plain terms of the PSA.  In addition to accounting for modifications that cannot be found in the "original executed note" (and thus fall outside the plain definition of Mortgage Rate), the Trustee interprets a single term—"Mortgage Rate"—to mean two different things within the Class Optimal Interest Distribution Amount calculation:  When the Trustee calculates the Pass-Through Rate, it interprets the term Mortgage Rate to mean the Modified Rate.  When the Trustee calculates the Notional Amount, it interprets the term Mortgage Rate to mean the Original Rate.  This violates the basic canon of contract interpretation that the same term must be interpreted consistently within the same agreement.

7.     The Trustee's approach suffers from numerous other flaws as well. *First*, the Trustee's approach subverts the intended structure of the Covered Trusts, which strips out certain cash flows to standardize the rate of interest derived from the diverse pool of mortgage loans used to pay the certificates. The resulting payment structure functions properly only if the Mortgage Rates for the underlying Mortgage Loans are locked in at inception. *Second*, the Trustee's approach improperly allocates *all* losses related to interest shortfalls caused by modifications to Mortgage Loans to the AAA-rated IO senior certificates, ahead of the lower-rated and contractually defined "Subordinated Certificates" that are supposed to protect the Senior Certificates against such losses. This outcome is particularly nonsensical when contrasted with the PSAs' treatment of interest shortfalls on unmodified Mortgage Loans, which both parties agree are allocated *first* to the Subordinated Certificates, and only then to Senior Certificates. *Third*, the Trustee's approach double counts certain losses on modified Mortgage Loans in direct contravention of the Covered Trusts' pass-through structure, which is intended to ensure that losses on the underlying mortgage loans are passed on to the certificates only once.

8.     In February 2018, Silian alerted the Trustee to the errors in its calculation of the interest payments owed to the IO senior certificates. Since then, Silian repeatedly has sought to engage the Trustee to discuss the problems with its calculation. After initially promising an explanation for its calculations, the Trustee then refused to provide one for over six months. When an explanation was ultimately provided, it failed to credibly address any of the fundamental flaws with the Trustee's approach described above. Even so, the Trustee has refused to correct its calculation.

9.     Silian brings this action for declaratory judgment regarding the proper calculation of the interest payments owed to the IO senior certificates under the PSAs, and for breach of

contract against the Trustee to recover any past interest shortfalls suffered by the IO senior certificates as a result of the Trustee's calculation error, to the extent that they cannot be recovered through the normal distribution waterfall set forth in the PSAs.

## JURISDICTION, VENUE, AND GOVERNING LAW

10. This Court has subject-matter jurisdiction over Silian's claims under 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000 and there is complete diversity between Silian and BNY.

11. This Court has personal jurisdiction over Defendant BNY because BNY is incorporated in New York and has its principal place of business in New York.  This Court also has personal jurisdiction over BNY because Silian's claims against BNY in this case arise out of BNY's transaction of business in New York.

12. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1)–(2) because this case concerns the interpretation of contractual provisions appearing in PSAs for New York common-law trusts that were drafted and negotiated in this district by lawyers at the Manhattan offices of Sidley Austin LLP and Thacher Proffit & Wood LLP.  The Trustee's calculations at issue in this case also occurred at the Trustee's offices in Manhattan.

13. Section 10.03 of the PSAs provides that disputes arising from the PSAs are governed by the laws of the state of New York.

## THE PARTIES

14. Plaintiff Silian is a limited liability company organized under the laws of the State of Delaware.  Silian has four members, each a Cayman Islands limited company with its principal place of business in the Cayman Islands.

15. Defendant BNY is a banking corporation organized under the laws of the state of New York with its principal place of business in New York.

## STATEMENT OF FACTS

**I.    THE STRUCTURE OF THE COVERED TRUSTS**

16.    Each Covered Trust is an RMBS trust that holds one or more pools of residential mortgage loans.  The Covered Trusts funded their purchase of mortgage loans with proceeds from the sale of certificates to investors.  These certificates are divided into various classes, each entitling its holders to a portion of either the principal payments, interest payments, or both, received by the Covered Trusts from the underlying mortgage borrowers.  The type, priority, and amount of distributions varies among different classes of certificates.

17.    The Covered Trusts are each governed by a pooling and servicing agreement (defined earlier as a "**PSA**").  The PSA sets forth the terms of payment for each class of certificates.

18.    The Covered Trusts are administered by a Trustee.  The Trustee's rights and obligations are also governed by the PSAs.  Among its duties, the Trustee is responsible for calculating and distributing the interest and principal payments to the different classes of certificates within each trust.  The PSAs provide the appropriate method for calculating the amounts distributed to each class of certificates.

19.    This action concerns the appropriate method for calculating the amounts distributed to a particular class of certificates referred to as interest-only (defined earlier as "**IO**") senior certificates under the PSAs for the Covered Trusts.  Silian is a beneficial owner of IO senior certificates in each of the Covered Trusts.

20.    Notably, each of the Covered Trusts was issued under one of two Countrywide-sponsored series of RMBS transactions (commonly known as "shelves") bearing the monikers Countrywide Alternative Loan Trust ("CWALT") or CHL Mortgage Pass-Through Trust ("CWHL").  As part of related shelves, the Covered Trusts use a generally common template for

their core transactional documents, including their PSAs.  As a result, the ultimate payment calculations at issue in this case are consistent across the Covered Trusts.

## II.     THE RELEVANT PSA PROVISIONS

### A.     The Priority-Of-Distributions Waterfall

21.     Under the PSAs, the Trustee is required to make monthly distributions to each Class of certificates on a defined Distribution Date.  PSA § 4.02(a)(1)–(4); *id.* art. I, at I-10 (definition of "Distribution Date").[1]  Depending on the particular Class of certificates at issue, these distributions include payments of principal, interest, or both.  *See* PSA § 4.02; *id.* Preliminary Statement, at 2–5.  Payments are made from available cash flow generated by the underlying mortgage loans and distributed based on a priority set forth in the PSAs, often referred to as the "distribution waterfall."

22.     For each of the Covered Trusts, interest owed on certificates is paid before any principal payments.  Specifically, the PSAs require the Trustee to apply Available Funds *first* "concurrently, to each interest-bearing Class of . . . Senior Certificates"—which includes the IO senior certificates at issue here—in "an amount allocable to interest equal to the related Class Optimal Interest Distribution Amount . . . ."  *Id.* § 4.02(a)(1)(ii).  Only *after* the Trustee applies Available Funds to interest owed to the Senior Certificates may it then apply the remaining

---

[1]  Citations to "PSA" are to the PSA for the Countrywide Alternative Loan Trust 2006-6CB (the "**CWALT 2006-6CB Trust**"), dated as of March 1, 2006, and attached hereto as **Exhibit A**.  The CWALT 2006-6CB Trust has been selected purely for exemplary purposes as it is understood to be broadly representative of the Covered Trusts as pertains to the calculation of IO interest.  Although the particular language and section numbering may vary among Covered Trusts, the PSAs for the other Covered Trusts contain provisions reaching a substantively identical calculation of the Class Optimal Interest Distribution Amount that is to be paid to the IO certificates.  Capitalized terms not defined herein shall have the meaning set forth in the PSA for the CWALT 2006-6CB Trust.  Attached hereto as **Appendix B** is a glossary of terms as defined in the CWALT 2006-6CB PSA that are set forth in the Complaint.

Available Funds to repay principal owed on the Senior Certificates and principal and interest owed on *any* other certificates.  In this sense, the PSAs subordinate principal payments to interest payments in the distribution waterfall.

23.     The interest payments given first priority in the distribution waterfall equal the Class Optimal Interest Distribution Amount for each interest bearing class of Senior Certificates, discussed further below.

24.     When the underlying mortgage borrowers default on interest or principal payments owed to the Covered Trusts, it results in a corresponding shortfall on interest and principal payments owed on the certificates.  Upon the final disposition of defaulted Mortgage Loans, the Covered Trusts recognize these interest and principal shortfalls as a "**Realized Loss**," which reduces the principal amount of the junior-most classes of certificates outstanding at the time when the Realized Loss is suffered.  PSA § 4.04.  The class of certificates that suffers the Realized Loss also experiences a reduction in interest payments going forward, because no interest is paid on the written-down portion of its principal balance.

**B.     The Class Optimal Interest Distribution Amount For IO Senior Certificates**

25.     Each Covered Trust PSA provides for at least one class of IO senior certificates, which entitle their holders to payment of interest, but not principal.  *See, e.g.*, PSA Preliminary Statement, at 2–5.  The interest amount paid to the IO senior certificates on each distribution date equals the "**Class Optimal Interest Distribution Amount**."  *See* PSA § 4.02.  The Trustee is required to calculate the Class Optimal Distribution Amount for the IO senior certificates by

multiplying the "Pass-Through Rate" by the "Notional Amount."  PSA art. I, at I-6.[2]  As a mathematical formula, this calculation may be represented as follows:

> ***Class Optimal Interest Distribution Amount = Pass-Through Rate * Notional Amount***

The PSAs, in turn, provide formulas for calculating the Pass-Through Rate and the Notional Amount as described below.

26.   **The Pass-Through Rate.**   The "**Pass-Through Rate**" for the IO senior certificates—using the Class 1-X Certificates[3] in the CWALT 2006-6CB Trust as a representative example—equals "the excess of (a) the weighted average of the Adjusted Net Mortgage Rates of the Non-Discount Mortgage Loans in Loan Group 1 . . . , over (b) 5.50%."  PSA Preliminary Statement, at 4 n.19.  A "**Non-Discount Mortgage Loan**" is "[a]ny Mortgage Loan in a Loan Group with an Adjusted Net Mortgage Rate that is greater than or equal to the Required Coupon for such Loan Group."  PSA art. I, at I-17.  The "**Required Coupon**" for Loan Group 1 is "5.50% per annum."  PSA art. I, at I-28.  Putting those definitions together, the Pass-Through Rate for the Class 1-X Certificates equals (1) the weighted average Adjusted Net Mortgage Rates of all Mortgage Loans with an Adjusted Net Mortgage Rate above 5.50% (2) minus 5.50%.  As a mathematical formula, this calculation may be represented as follows:

> ***Pass-Through Rate =***
> ***Weighted Avg. Of Adjusted Net Mtg. Rate for Non-Discount Mtg. Loans – 5.50%***

---

[2]   As detailed below, the definition of Class Optimal Interest Distribution Amount also includes "**Class Unpaid Interest Amounts**," which includes unreimbursed shortfalls in the interest that was supposed to be paid in prior distributions.  PSA art. I, at I-6.

[3] The CWALT 2006-6CB Trust provides for two classes of IO senior certificates.  For clarity the Complaint focuses on only one of those classes—the Class 1-X Certificates.

27.     **The Notional Amount.**  The "**Notional Amount**" for the Class 1-X Certificates is "an amount equal to the aggregate of the Stated Principal Balances of the Non-Discount Mortgage Loans in Loan Group 1 as of the Due Date in the preceding calendar month . . . ."  PSA art. I, at I-18–19.  The "**Stated Principal Balance**" is the "unpaid principal balance of such Mortgage Loan[s] as of [the] Due Date," subject to certain adjustments not relevant here.  PSA art. I, at I-31. A "**Non-Discount Mortgage Loan**," as explained above, is "[a]ny Mortgage Loan in a Loan Group with an Adjusted Net Mortgage Rate that is greater than or equal to the Required Coupon [*i.e.*, 5.50%] for such Loan Group."  PSA art. I, at I-17.  Putting those definitions together, the Notional Amount for the Class 1-X Certificates equals the sum of the unpaid portions of the principal balances of Mortgage Loans with an Adjusted Net Mortgage Rate above 5.50%.  As a mathematical formula, this calculation may be represented as follows:

> ***Notional Amount = Stated Principal Balance of Non-Discount Mtg. Loans***

28.     As noted above, the Trustee calculates the Class Optimal Interest Distribution Amount for the Class 1-X Certificates by multiplying the Pass-Through Rate (calculated as described in paragraph 26) by the "Notional Amount" (calculated as described in paragraph 27). Broken down, the Class Optimal Interest Distribution Amount equals the product of (1) the difference between (a) the weighted average spread of interest on the Non-Discount Mortgage Loans, and (b) 5.50%, multiplied by (2) the Stated Principal Balance of those Non-Discount Mortgage Loans.  A mathematical formula for the calculation of the Class Optimal Interest Distribution Amount, incorporating the formulas for calculating the Pass-Through Rate and the Notional Amount, may be represented as follows:

> ***Class Optimal Interest Distribution Amount =***
> ***(Weighted Avg. Of Adjusted Net Mtg. Rates For Non-Discount Mtg. Loans – 5.50%) ****
> ***Stated Principal Balance Of Non-Discount Mtg. Loans***

29.     An example helps illustrate the mechanics of calculating the Class Optimal Interest Distribution Amount.  Consider a simplified RMBS trust with a Required Coupon of 5.00% that is backed by ten mortgages, each equally weighted with a Stated Principal Balance of $100,000, and the Adjusted Net Mortgage Rates set forth in the table below:

| Loan No. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| Adjusted Net Mortgage Rate | 4.5% | 4.6% | 4.7% | 4.8% | 4.9% | 5.1% | 5.2% | 5.3% | 5.4% | 5.5% |

30.     Loan numbers 1–5 are Discount Mortgage Loans, because their Adjusted Net Mortgage Rate is below the Required Coupon of 5%.  Loan numbers 6–10 are Non-Discount Mortgage Loans, because their Adjusted Net Mortgage Rate is above the Required Coupon of 5%. The Pass-Through Rate is determined by taking the weighted average of the Adjusted Net Mortgage Rate for loan numbers 6–10 minus the Required Coupon of 5.00%.[4]

31.     In this example, the Pass-Through Rate is 0.3% (*i.e.*, Average (5.1%, 5.2%, 5.3%, 5.4%, 5.5%) – 5.0%).  To calculate the Class Optimal Interest Distribution Amount, this Pass-Through Rate is multiplied by the Notional Amount.  The Notional Amount is the Stated Principal Balance of the Non-Discount Mortgage Loans.  Here, the Stated Principal Balance of the Non-Discount Mortgage Loans is $500,000 (*i.e.*, 5 Non-Discount Mortgage Loans * $100,000 Stated

---

[4]     The *weighted* average in our example is simply the average of the Adjusted Net Mortgage Rate for loans 6–10 because they are assumed to be weighted equally.

Principal Balance per Non-Discount Mortgage Loan).   Thus, the Class Optimal Interest Distribution Amount is $1,500 (*i.e.*, 0.3% * $500,000).

  **C.**  **The Mortgage Rate**

  32. As shown above, the term Adjusted Net Mortgage Rate is used at two different steps in the formula required to determine the Class Optimal Interest Distribution Amount for IO senior certificates.  *First*, the Adjusted Net Mortgage Rate of the Non-Discount Mortgage Loans is a factor in the formula to calculate the Pass-Through Rate.  *Second*, the Adjusted Net Mortgage Rate determines whether a loan is a Non-Discount Mortgage Loan (*i.e.*, a mortgage loan with an interest rate greater than or equal to the Required Coupon) or a Discount Mortgage Loan (*i.e.*, a mortgage loan with an interest rate lower than the Required Coupon).  And the Stated Principal Balance of the Non-Discount Mortgage Loans *alone* is considered to determine the Notional Amount by which the Pass-Through Rate is multiplied to calculate the Class Optimal Interest Distribution Amount for the IO senior certificates.

  33. "**Adjusted Net Mortgage Rate**" is defined, in the relevant part, as:  "As to each Mortgage Loan, and at any time, the per annum rate equal to the Mortgage Rate less the sum of the Trustee Fee Rate and the Master Servicing Fee Rate."  PSA art. I, at I-1.[5]  The PSAs define "**Mortgage Rate**" as "[t]he annual rate of interest borne by a Mortgage Note from time to time . . . ."  PSA art. I, at I-17.[6]  Finally, the PSAs define "**Mortgage Note**" as "[t]he original

---

  [5] The Trustee Fee Rate is defined as, "[w]ith respect to each Mortgage Loan, 0.009% per annum."  PSA art. I, at I-34.  The Master Servicing Fee Rate is defined as, "[w]ith respect to each Mortgage Loan, 0.25% per annum."  PSA art. I, at I-15.  Neither is in dispute here.

  [6] The Mortgage Rate is reduced by "any interest premium charged by the mortgagee to obtain or maintain any Primary Insurance Policy."  PSA art. I, at I-17.  Those interest premiums are not in dispute here.

executed note or other evidence of indebtedness evidencing the indebtedness of a Mortgagor under a Mortgage Loan." *Id.*

## III.   THE PARTIES' DISPUTE REGARDING THE DEFINITION OF MORTGAGE RATE

34.   Silian and the Trustee dispute the definition of Mortgage Rate and, specifically, how that term as used in the calculation of the Class Optimal Interest Distribution Amount treats any modifications made to the underlying loans' mortgage rates after the issuance of the Covered Trusts.  For the reasons explained below, only Silian's interpretation of the term Mortgage Rate is consistent with the plain terms of the PSAs and the intended structure of the Covered Trusts.

### A.   Silian's Interpretation Of Mortgage Rate Is Consistent With The Unambiguous Terms Of The PSAs

35.   Each Mortgage Note underlying the Covered Trusts provides an annual interest rate that the mortgage borrower is contractually obligated to pay from time to time over the life of the mortgage.  This Complaint refers to this rate as the "**Original Rate**" throughout, as previously defined above.

36.   However, the Mortgage Note's Original Rate may be altered prior to repayment in full of the underlying mortgage loan.  Modification of the Original Rate may occur through a forbearance agreement (*i.e.*, agreeing to temporarily forbear on the collection of a portion of the interest) or other types of consensual modification (earlier defined collectively as, "**Rate Modifications**").  This Complaint refers to the new interest rate that results from a Rate Modification as the "**Modified Rate**," as previously defined above.

37.   Silian asserts that the correct calculation of the Class Optimal Interest Distribution Amount requires the Trustee to use the Original Rate as the Mortgage Rate.  Silian's approach is consistent with the unambiguous terms of the PSAs, which define Mortgage Rate as the annual

rate of interest reflected in the original executed mortgage note, not the rate that exists after subsequent Rate Modifications.

38.    Specifically, "Mortgage Rate" is defined as "[t]he annual rate of interest borne by a Mortgage Note," which, in turn, is defined as "[t]he original executed note or other evidence of indebtedness evidencing the indebtedness of a Mortgagor under a Mortgage Loan."  PSA art. I, at I-17 (definitions of "Mortgage Rate" and "Mortgage Note").  Because the Original Rate is the only rate that appears in the "original executed note or other evidence of indebtedness," it is the only rate that meets the definition of Mortgage Rate in the PSAs.

### B.    The Trustee's Interpretation Of Mortgage Rate Is Not Faithful To The PSAs' Plain Terms And Controverts The Covered Trusts' Intended Structure

39.    The Trustee has been interpreting the term Mortgage Rate incorrectly—and inconsistently—in its calculation of the Class Optimal Interest Distribution Amount for the IO certificates in the Covered Trusts.  As explained further below, although the Trustee uses the Original Rate as the Mortgage Rate to determine whether a loan is a Non-Discount Mortgage Loan in order to calculate the Notional Amount, the Trustee uses the Modified Rate as the Mortgage Rate to calculate the Pass-Through Rate.   The Trustee's use of the Modified Rate to calculate the Pass-Through Rate is not only inconsistent with the plain terms of the PSAs, but would lead to absurd results that run counter to the intended structure and operation of the Covered Trusts.

40.    The Trustee's interpretation of Mortgage Rate as being the Modified Rate when calculating the Pass-Through Rate is irreconcilable with the plain language of the Mortgage Rate definition which, as described above, turns on the "annual rate of interest" in the "original executed note or other evidence of indebtedness."  *Id.*  Obviously, there is no way for Rate Modifications which, by definition, occur *after* the execution of the original mortgage note to be reflected in the "original executed note" for a mortgage loan.   The Trustee's use of the Modified Rate when

calculating the Pass-Through Rate thus violates the express terms of the PSAs' definition of Mortgage Rate.

41.     Perhaps even more troublingly, the Trustee's approach is internally inconsistent. Although the Trustee uses the Modified Rate to determine the Mortgage Rate in calculating the Pass-Through Rate, the Trustee then uses the Original Rate to determine the Mortgage Rate when identifying which loans constitute Non-Discount Mortgage Loans to calculate the Notional Amount.  By assigning two starkly different meanings to a single term—Mortgage Rate—in the same calculation, the Trustee's method of determining the Class Optimal Interest Distribution Amount violates the basic rule of contract interpretation requiring that the same term be interpreted consistently in the same agreement.  In addition, the Trustee's interpretation cannot be reconciled with numerous structural attributes of the Covered Trusts.

42.     *First*, the Pass-Through Rate must be calculated using the Original Rate to preserve the intended functioning and structure of the Covered Trusts.  Interest-only (and principal-only) certificates are included in the Covered Trusts to standardize the coupon derived from a diverse pool of fixed-rate mortgages by stripping out certain cash flows.  For Non-Discount Mortgage Loans—those loans in the pool with an interest rate equal to or above the Required Coupon of 5.50%—the excess interest over 5.50% is stripped out and paid to the IO senior certificates.  This reduces the effective interest rate derived from the Non-Discount Mortgage Loans (after payment of the IO senior certificates) to 5.50%, the Required Coupon.  For Discount Mortgage Loans— those loans in the pool with an interest rate below the Required Coupon of 5.50%—principal is stripped out and paid to principal-only (or "**PO**") certificates.  This increases the effective interest rate derived from the Discount Mortgage Loans (after payment of the PO certificates) to the Required Coupon.  In these two inverse ways, the Covered Trusts standardize the coupons received

15

across a pool of mortgage loans for purposes of passing through that standardized rate to certificateholders.

43.     If the PSAs permitted the Mortgage Rate to fluctuate over time, Rate Modifications could cause Non-Discount Mortgage Loans to become Discount Mortgage Loans.  This would increase cash flow to the PO certificates at the expense of the non-PO certificates.  *See* PSA § 4.02(a)(1)(iv)(x), (y).  As the balance of Discount Mortgage Loans increased over time, the amount of principal stripped out and paid to PO certificates would increase in proportion, reducing the amount of principal left over for the non-PO investors.[7]  Transferring principal balances from non-PO certificates to PO certificates like this would subvert the intended structure of the Trust by generating windfall cash flow to the PO certificates at the expense of the other classes of Senior Certificates.  Thus, for the Covered Trusts to function in their intended fashion, the Mortgage Rate must be the Original Rate.[8]

---

[7]  For example, under the CWALT 2006-6CB Trust PSA, after payment of interest at the Class Optimal Interest Distribution Amount, remaining funds are allocated as principal repayments among the PO certificates and the non-PO certificates based on the PO Formula Principal Amount and the Non-PO Formula Principal Amount, respectively.  PSA § 4.02(a)(1)(iv)(x), (y).  If Rate Modifications could cause Non-Discount Mortgage Loans to become Discount Mortgage Loans, the PO Formula Principal Amount would increase and the Non-PO Formula Principal Amount would decrease, thus stripping out more principal to the PO certificates and leaving less principal for the non-PO certificates.  *See* PSA art. I, at I-17–18 (definition of "Non-PO Formula Principal Amount"); *id.* at I-22–23 (definition of "PO Formula Principal Amount"); *id.* at I-23 (definition of "PO Percentage," providing a formula that results in an increased PO Percentage for each Discount Mortgage Loan appearing in a Loan Group).  Ultimately, this method would reduce the amounts available to make principal repayments to the non-PO certificates regardless of available cash flow to the Trust as a whole.  Such an outcome would contravene the structure of the Covered Trusts and market expectations.

[8]  The Trustee appears to acknowledge that using the Modified Rate to determine whether loans constitute Non-Discount Mortgage Loans or Discount Mortgage Loans would subvert the intent of the structure.  Rather than recognizing that this compels the Original Rate to be used for all purposes, however, the Trustee instead selectively uses the Original Rate *solely* for determining what constitutes Non-Discount Mortgage Loans or Discount Mortgage Loans.  As discussed above, such inconsistency is impermissible under canons of contract construction.

44.      *Second*, the Trustee's approach leads to a commercially unreasonable result because it would subordinate AAA-rated *Senior* Certificates (which, by definition, include the IO senior certificates) to lower-rated and expressly denominated "*Subordinated* Certificates,"[9] and treat interest shortfalls on modified Mortgage Loans differently than interest shortfalls on unmodified Mortgage Loans.  Although the PSAs require that interest shortfalls be treated as a Realized Loss—borne by the junior-most principal balance certificates upon the disposition of a defaulted Mortgage Loan—the Trustee's approach transforms these same shortfalls into losses borne solely by the IO senior certificates when there is a Rate Modification.  This result has no basis in either the language of the PSAs or structure of the Covered Trusts.

45.      The PSAs expressly incorporate interest shortfalls not recovered upon disposition of a defaulted Mortgage Loan in the PSAs' definition of "**Realized Loss**."  *See* PSA art. I, at I-25–26 (defining "Realized Loss" as including "[w]ith respect to each Liquidated Mortgage Loan . . . interest at the Adjusted Net Mortgage Rate from" the time when "interest was last paid or advanced (and not reimbursed)" until the date when "Liquidation Proceeds are required to be distributed").  A Realized Loss—including these interest shortfalls—reduces the *principal* amount owing to the junior-most certificates outstanding (and thus also the interest owing on those certificates going forward).  PSA § 4.04.  In this way, the PSA imposes interest shortfalls on the junior certificates before the senior certificates, thus preserving the subordination priorities in the capital structure.  The IO senior certificates are not entitled to principal payments and, therefore, do not suffer any direct loss as a result of this Realized Loss.[10]

---

[9]   The "Subordinated Certificates" are defined as the Class M and Class B Certificates. *See* PSA art. I, at I-32; PSA Preliminary Statement, at 13.

[10]   A Realized Loss does indirectly reduce the Class Optimal Interest Distribution Amount paid to the IO senior certificates.  This indirect reduction occurs because a Realized Loss reduces the Notional Amount, which is a factor in the calculation of the Class Optimal Interest Distribution

46.     The Trustee's method of calculating the Class Optimal Interest Distribution Amount for the IO certificates, on the other hand, requires that the IO senior certificates bear *all* of the losses associated with interest shortfalls on Mortgage Loans with Rate Modifications.  The Trustee accounts for interest shortfalls by reducing the Pass-Through Rate that applies only to the IO senior certificates.  By reducing this Pass-Through Rate, the interest shortfalls are applied to reduce payments to the IO senior certificates—which are defined as Senior Certificates under the PSAs, *see* PSA Preliminary Statement, at 12–13—before a Realized Loss is applied to write down the *Subordinated* Certificates.    The AAA-rated IO senior certificates are the *only* Senior Certificates whose interests are subordinated to lower-rated junior certificates in this manner— nothing in the PSAs supports this structure.  The Covered Trusts' offering documents represent to investors, "The rights of the holders of the subordinated certificates to receive distributions with respect to the mortgage loans will be subordinated to the rights of the holders of the senior certificates . . . ." Prospectus Supplement, at S-135.  The Trustee's approach is irreconcilable with this intended structure, and furthermore would conflict with the rating agencies having issued AAA-ratings for the IO senior certificates while issuing lower ratings for the Subordinated Certificates (reflecting their intended lower creditworthiness).

47.     The Trustee's approach also creates a stark disparity between the impact of interest shortfalls on unmodified Mortgage Loans and the impact of interest shortfalls on modified Mortgage Loans.  For unmodified Mortgage Loans, a shortfall in interest paid by the borrower is treated as a Realized Loss reducing the principal balance of junior certificates, starting with the Subordinated Certificates and only after that followed by the Senior Certificates.  But for modified

---

Amount.  By reducing the Notional Amount, however, a Realized Loss does not reduce the Pass-Through Rate or require the IO senior certificates to bear the consequences of interest shortfalls ahead of the Subordinated Certificates or other Senior Certificates.

Mortgage Loans, the Trustee's approach transforms that same shortfall into a loss for the IO senior certificates, based solely on the Master Servicer's decision to modify the Mortgage Loan.[11]  If the decision by the Master Servicer to modify a mortgage loan could result in such radically different treatment of interest shortfalls, surely the PSAs or the offering materials would disclose such a risk.  Yet both are silent on this point.

48.    *Third*, the Trustee's approach results in the double counting of certain interest shortfalls on modified Mortgage Loans as *both* a Realized Loss *and* a reduction of the Class Optimal Interest Distribution Amount for the IO senior certificates, which would contravene the fundamental pass-through structure of the Covered Trusts by unnecessarily inflating losses imposed on the certificates over and above losses suffered by the underlying Mortgage Loans.

49.    In particular, each Covered Trust specifies two circumstances where interest shortfalls caused by modifications are not a Realized Loss (which would reduce the principal amount of the junior certificates), but instead, reduce interest paid to all interest-bearing certificates—albeit on a *pro rata* basis, and not concentrated on the IO senior certificates.  Specifically, the PSAs provide that interest shortfalls caused by (i) a court order reducing the interest owed on a Mortgage Loan (a "**Debt Service Reduction**") and (ii) a reduction in the interest rate owed on a Mortgage Loan based on the Servicemembers Relief Act, or other similar state statutes ("**Relief Act Reductions**") will reduce *pro rata* the Class Optimal Interest Distribution

---

[11]    A similarly irreconcilable outcome results with temporary reductions in interest paid on modified Mortgage Loans—such as interest shortfalls resulting from forbearance agreements. The Trustee's approach treats these temporary reductions as a permanent loss of interest for IO senior certificates, without providing any way for the IO senior certificates to recover those losses if and when the temporary reductions are ultimately repaid upon the disposition of the modified Mortgage Loan.   This too stands in stark contrast to the treatment of interest shortfalls on unmodified Mortgage Loans, which are treated as a Realized Loss and reimbursed in the future as "Subsequent Recoveries" if they are ultimately recovered upon disposition.  *See* PSA § 4.02(f).

Amount owed to *all* interest-bearing certificates (including the IO senior certificates, the other interest-bearing Senior Certificates, and the interest-bearing Subordinated Certificates). PSA § 4.02(d).[12]

50.    If these specific Rate Modifications were *also* accounted for in calculating the Pass-Through Rate of the IO senior certificates, as required by the Trustee's approach, they would be taken out of the distribution to certificateholders *twice*—once as a *pro rata* reduction of the Class Optimal Interest Distribution Amount to all interest-bearing certificates and once as a reduction in the Pass-Through Rate to the IO senior certificates only. Such a result would subvert the pass-through structure of the Covered Trusts, by imposing losses on the certificates that are not tied to losses on the underlying mortgage loans. *See* PSA art. I, at I-25–26 (defining "Realized Loss" as occurring upon actual losses incurred on underlying mortgage loans); *id.* at I-9, I-26 (defining "Debt Service Reduction" and "Relief Act Reductions" as an actual reduction in the interest rate on the underlying mortgage loans).

51.    Moreover, the PSAs' identification of two specific circumstances where Rate Modifications reduce interest paid to the certificates strongly suggests that the same result was not intended in other circumstances. If it were, the PSAs would specifically provide for that treatment, as they do for Debt Service Reduction and Relief Act Reduction. Because the PSAs specifically

---

[12]    Though Silian's position is that other interest shortfalls in the context of a modified Mortgage Loan are a Realized Loss, to the extent the Court disagrees, the PSAs' treatment of these specific interest shortfalls as reducing the Class Optimal Interest Distribution Amount paid to all interest-bearing certificates on a *pro rata* basis is significant. At the very least, the Trustee should follow the PSAs' guidance and apply these other interest shortfalls in the same manner—*i.e.*, *pro rata* to all interest bearing certificates. Allocation of interest shortfalls associated with Rate Modifications *pro rata* among all interest-bearing certificates would significantly increase the Class Optimal Interest Distribution Amounts owed to the IO senior certificates relative to the Trustee's current approach, which inexplicably allocates these interest shortfalls to the IO senior certificates only.

contemplate that interest shortfalls will be treated as a Realized Loss upon the disposition of defaulted Mortgage Loans and do not specifically provide that Rate Modifications should reduce the Class Optimal Interest Distribution Amounts owed on any interest-bearing certificates, such shortfalls should plainly be treated as a Realized Loss.

52.     For all these reasons, Silian requested that the Trustee change its approach to calculating the Pass-Through Rate for IO senior certificates issued by the Covered Trusts.  The Trustee has refused to do so.

## IV.     THE SENIOR IO CERTIFICATES ARE ENTITLED TO THE DISTRIBUTION OF PAST INTEREST SHORTFALLS AS CLASS UNPAID INTEREST AMOUNTS

53.     The PSAs for the Covered Trusts specifically contemplate that the interest actually paid on a given Distribution Date to the Senior Certificates, including the IO senior certificates, might be less than the amount owed to the holders of those certificates based on the Class Optimal Interest Distribution Amount and direct the Trustee how to address this situation.  The PSAs define the difference between the Class Optimal Interest Distribution Amount and the amount of interest actually distributed to a given class of certificates as the "**Class Interest Shortfall**."  The Class Interest Shortfall equals "the amount by which the amount described in clause (i) of the definition of Class Optimal Interest Distribution Amount for such Class exceeds the amount of interest actually distributed on such Class on such Distribution Date pursuant to clause (i)."  PSA art. I, at I-6. The PSAs aggregate these Class Interest Shortfalls over time into "**Class Unpaid Interest Amounts**" for each Class of interest-bearing certificates.  Class Unpaid Interest Amounts are defined as "the amount by which the aggregate Class Interest Shortfalls for such Class on prior Distribution Dates exceeds the amount distributed" through the distribution waterfall.  PSA art. I, at I-6.

54.     The PSAs then require that these shortfall amounts be repaid at the next Distribution Date as part of the Class Optimal Interest Distribution Amount for each class of interest-bearing Senior Certificates at the top of the distribution waterfall.  Specifically, the PSAs define Class Optimal Interest Distribution Amount to include "any Class Unpaid Interest Amounts for such Class . . . ."  PSA art. I, at I-6.  The Class Optimal Interest Distribution Amount, including the Class Unpaid Interest Amounts, for each class of the Senior Certificates is then distributed in the first-priority position under Section 4.02(a)(1)(ii) of the distribution waterfall, before any principal amounts are distributed.

55.     As a result of the Trustee's historical miscalculation of the Pass-Through Rate, the Covered Trusts have made historical interest payments to the IO senior certificates that are below the Class Optimal Interest Distribution Amount owed thereon.  These shortfalls meet the definition of Class Interest Shortfalls and, in the aggregate, meet the definition of the Class Unpaid Interest Amounts for each class of IO senior certificates.  The Trustee is required to incorporate such amounts into the definition of the Class Optimal Interest Distribution Amount for the IO senior certificates and repay those amounts in accordance with the distribution waterfall.

## V.     THE TRUSTEE'S CONDUCT IN CALCULATING INTEREST OWED TO IO SENIOR CERTIFICATES IS AT LEAST NEGLIGENT

56.     The Trustee's historical use of the Modified Rate in calculating the Pass-Through Rate was at minimum negligent.  Its interpretation of the definition of Mortgage Rate as accounting for Rate Modifications not only violates the plain terms and structure of the Covered Trusts but also requires the Trustee to apply a single term in two diametrically opposite ways in performing a single calculation—an approach that is absurd and improper on its face.

57.     The conduct of other trustees charged with administering the vast majority of RMBS trusts formed prior to the financial crisis confirms the Trustee's negligence here.  Interest-

only certificates like those at issue here are common in RMBS trusts from the mid-2000s holding pools of fixed-rate mortgages.  It is standard for this type of IO certificate to require calculation of the interest payment (*i.e.,* the Class Optimal Interest Distribution Amount here) using the **unmodified** interest rate on the underlying mortgage loans, without regard to Rate Modifications not appearing in the original note, just like the PSAs for the Covered Trusts here.  In sharp contrast to the Trustee's mishandling of the calculation under the PSAs for the Covered Trusts, the four other major trustees for pre–financial crisis RMBS (Deutsche Bank, US Bank, HSBC, and Wells Fargo) have uniformly performed the calculation of the IO certificate interest payments correctly.

58.     In one particularly compelling example, Deutsche Bank employed the correct approach in its role as the trustee for a Residential Asset Securitization Trust, or "RAST," shelf of RMBS trusts (the "**RAST Trusts**"), the relevant excerpts of which are attached hereto as **Exhibit B**.  The RAST Trust PSAs contain materially identical definitions to those in the Covered Trust PSAs.  Like the Covered Trust PSAs, the RAST Trust PSAs define Mortgage Rate as "[t]he annual rate of interest borne by a Mortgage Note from time to time (net of the interest premium for any Lender PMI Loan)."  *See, e.g.*, RAST 2005-A15 Trust PSA, at 30.  And the RAST Trust PSAs, like the Covered Trust PSAs, define the Mortgage Note as "[t]he original executed note or other evidence of the indebtedness of a Mortgagor under a Mortgage Loan."  *Id.*  The definitions of Adjusted Net Mortgage Rate and Non-Discount Mortgage Loan, and the formula for calculating the Pass-Through Rate for the IO senior certificates, are also substantively identical.  Applying these very same terms in the RAST Trust PSAs, Deutsche Bank correctly uses the Original Rate to determine the Pass-Through Rate for the IO senior certificates.

59.     That the Trustee's market peers have uniformly applied the calculation of the interest payments on analogous IO certificates correctly shows that the Trustee's conduct in respect of the Covered Trusts falls well short of industry standards of care.

60.     While the Trustee's miscalculation of the Class Optimal Interest Distribution Amount for the Covered Trusts was the product of at least negligence prior to this year, its recent conduct amounts to willful disregard for investors' rights.  In February 2018, Silian contacted the Trustee regarding its calculation error and explained why the Trustee's approach is inconsistent with both the clear terms of the PSAs and the overall structure of the Covered Trusts.  After failing to receive any explanation from the Trustee for its calculation methodology, Silian followed up with a detailed letter to the Trustee on May 4, 2018, explaining the proper calculation methodology and why the Trustee's calculation methodology was patently incorrect.

61.     While the Trustee acknowledged that Silian was entitled to an explanation for the Trustee's calculations of the amounts paid on the IO senior certificates, no explanation was forthcoming.  Indeed, for approximately six months, despite weekly requests—many of which were not even acknowledged by the Trustee—the Trustee refused to defend its approach or do anything to address Silian's concerns.  Then, in discussions in October 2018, the Trustee finally attempted to articulate a basis for its approach to calculating interest payments to the IO senior certificates but was still unable to address fundamental flaws to its approach that Silian had identified and that are stated above.

62.     Nevertheless, Silian continued to engage with the Trustee regarding its calculation of the amounts paid to the IO senior certificates in an attempt to facilitate an efficient process for economically interested investors in the Covered Trusts to obtain a judicial determination of the proper Class Optimal Interest Distribution Amount.  These discussions, which were also hampered

by the Trustee's repeated delays, culminated in a November 30, 2018 letter from the Trustee refusing to act and stating obliquely that a process for judicial determination of the Class Optimal Interest Distribution Amount would not be "in the interest of the Trusts." A copy of the Trustee's November 30, 2018 letter is attached hereto as **Exhibit C**. Silian continued to engage with the Trustee thereafter to explore other alternatives to resolving the parties' dispute but reached a final impasse on December 10, 2018. The Trustee's refusal to correct its calculation error or meaningfully address the reasons set forth herein as to why its calculation is incorrect has left Silian with no recourse but to initiate this action.

63.     The Trustee's refusal to correct its calculation of the Class Optimal Interest Distribution Amount has caused Silian significant harm that continues to this day. During its discussions with Silian regarding the proper calculation of the Class Optimal Interest Distribution Amount—apparently aware that its approach was subject to challenges that it was unable to address—the Trustee not only continued to underpay the IO senior certificates but also failed to escrow the funds that were the subject of the dispute, resulting in them being distributed out of the Covered Trusts. The underpayments on the IO certificates since February 2018 have resulted in Silian receiving millions of dollars less than it was entitled to in the last ten months alone.

64.     In light of the Trustee's breaches and failure to abide by its minimum standard of care, to the extent Class Unpaid Interest Amounts are insufficient to reimburse the IO senior certificates held by Silian for past shortfalls, Silian seeks to recover these amounts from the Trustee in the form of damages.

## CAUSES OF ACTION

### COUNT I
#### DECLARATORY JUDGMENT

65.     Silian repeats and realleges the foregoing allegations as though they were fully set forth in this paragraph.

66.     Silian is the beneficial owner of IO senior certificates issued by each of the Covered Trusts and is entitled to exercise all of its rights under the PSAs in respect of those certificates.

67.     Under the PSAs, the Trustee is required to calculate the appropriate amounts owed to certificateholders in the Covered Trusts on each Distribution Date in accordance with the distribution waterfall in the PSAs.  PSA § 4.02(a)(1)–(4).  The IO senior certificates are entitled to interest as the Class Optimal Interest Distribution Amount.  PSA § 4.02(a)(1).

68.     The Class Optimal Interest Distribution Amount for the IO senior certificates equals the Pass-Through Rate multiplied by the Notional Amount.  PSA art. I, at I-6.

69.     The Pass-Through Rate equals the weighted average of the Adjusted Net Mortgage Rates for the Non-Discount Mortgage Loans minus the Required Coupon.  PSA Preliminary Statement, at 4 n.19.

70.     The Adjusted Net Mortgage Rates of the underlying Mortgage Loans used in the formula for determining the Pass-Through Rate are calculated based on the Mortgage Rates of the underlying Mortgage Loans.  PSA art. I, at I-1.

71.     The PSAs define "Mortgage Rate" as "[t]he annual rate of interest borne by a Mortgage Note from time to time, net of any interest premium charged by the mortgagee to obtain or maintain any Primary Insurance Policy."  PSA art. I, at I-17.  The PSAs define "Mortgage Note" as "[t]he original executed note or other evidence of indebtedness evidencing the indebtedness of a Mortgagor under a Mortgage Loan."  *Id.*

72.     Historically, the Trustee has defined the Mortgage Rate as the Modified Rate in calculating the Adjusted Net Mortgage Rate used to determine the Pass-Through Rate.   This approach violates the PSAs, which defines the Mortgage Rate as the Original Rate.

73.     The Trustee's miscalculation of the Pass-Through Rate has resulted in underpayment of interest to the IO senior certificates, which continues to occur today.

74.     The PSAs define the difference between the Class Optimal Interest Distribution Amount and the amount of interest actually distributed to a given class of certificates as the "Class Interest Shortfall."  PSA art. I, at I-6.  The PSAs aggregate Class Interest Shortfalls over time into "Class Unpaid Interest Amounts" for each Class of interest-bearing certificates.  *Id.*  Class Unpaid Interest Amounts are included in the definition of the Class Optimal Interest Distribution Amount that must be paid to IO senior certificates in the top-priority position of the distribution waterfall. *Id.*

75.     The historical underpayment of interest to the IO senior certificates caused by the Trustee's calculation error meet the definition of Class Unpaid Interest Amounts.  They therefore must be incorporated into the definition of the Class Optimal Interest Distribution Amount owed to the IO senior certificates and distributed in accordance with the distribution waterfall.

76.     Silian alerted the Trustee to its calculation error and requested that the Trustee correct its method for calculating the Class Optimal Interest Distribution Amount for IO senior certificates issued by the Covered Trusts.  The Trustee has refused to do so.

77.     Accordingly, an actual and justiciable controversy exists between the parties regarding the proper calculation of the Pass-Through Rate and Silian's entitlement to any historical underpayments caused by the Trustee's miscalculation of the Class Optimal Interest Distribution Amount as Class Unpaid Interest Amounts.  The controversy is of sufficient immediacy and reality

to warrant declaratory relief under 28 U.S.C. § 2201, as Silian has suffered, and continues to suffer, losses due to the Trustee's miscalculation of the Pass-Through Rate.

78.     Silian therefore is entitled to a declaration that:

a.  the Trustee is obligated to calculate the Mortgage Rate used to determine the Class Optimal Interest Distribution Amount for the IO senior certificates issued by the Covered Trusts using the Original Rate and not the Modified Rate; and

b.  the Trustee is obligated to treat historical shortfalls in interest paid to the IO senior certificates as Class Unpaid Interest Amounts and distribute those Class Unpaid Interest Amounts to the IO senior certificates out of future cash flows to the Covered Trusts in accordance with the distribution waterfall in the PSAs.

## COUNT II
### BREACH OF CONTRACT

79.     Silian repeats and realleges the foregoing allegations as though they were fully set forth in this paragraph.

80.     At all relevant times, the Trustee was a party to the PSAs, which are valid, enforceable contracts.  Silian is the beneficial owner of IO senior certificates issued by each of the Covered Trusts and is an intended third-party beneficiary of the PSAs entitled to exercise all of its rights under the PSAs in respect of those certificates.

81.     Under the PSAs, the Trustee is required to calculate the appropriate amounts owed to certificateholders in the Covered Trusts on each Distribution Date in accordance with the distribution waterfall in the PSAs.  PSA § 4.02(a)(1)–(4).  The IO senior certificates are entitled to interest as the Class Optimal Interest Distribution Amount.  PSA § 4.02(a)(1).

82.     The Class Optimal Interest Distribution Amount for the IO senior certificates equals the Pass-Through Rate multiplied by the Notional Amount.  PSA art. I, at I-6.

83.     The Pass-Through Rate equals the weighted average of the Adjusted Net Mortgage Rates for the Non-Discount Mortgage Loans minus the Required Coupon.  PSA Preliminary Statement, at 4 n.19.

84.     The Adjusted Net Mortgage Rates of the underlying Mortgage Loans used in the formula for determining the Pass-Through Rate is calculated based on the Mortgage Rates of the underlying Mortgage Loans.  PSA art. I, at I-1.

85.     The PSAs define "Mortgage Rate" as "[t]he annual rate of interest borne by a Mortgage Note from time to time, net of any interest premium charged by the mortgagee to obtain or maintain any Primary Insurance Policy."  PSA art. I, at I-17.  The PSAs define "Mortgage Note" as "[t]he original executed note or other evidence of indebtedness evidencing the indebtedness of a Mortgagor under a Mortgage Loan."  *Id.*

86.     Historically, the Trustee has defined the Mortgage Rate as the Modified Rate in calculating the Adjusted Net Mortgage Rate used to determine the Pass-Through Rate.  This approach violates the PSAs, which defines the Mortgage Rate as the Original Rate.

87.     The Trustee's miscalculation of the Pass-Through Rate has resulted in underpayment of interest to the IO senior certificates, which continues to occur today.

88.     Silian alerted the Trustee to its calculation error and requested that the Trustee correct its method for calculating the Class Optimal Interest Distribution Amount for IO senior certificates issued by the Covered Trusts.  The Trustee has refused to do so in the face of overwhelming evidence that its approach is incorrect.

89.     The Trustee's historical miscalculation of the Class Optimal Interest Distribution Amount was at least negligent and is a breach of the Trustee's duties under the PSAs for which the Trustee is liable.  The Trustees continued miscalculation of the Class Optimal Interest

Distribution Amount after being alerted to its error by Silian in February 2018 is a knowing and intentional breach of the PSAs.

90. Silian is thus entitled to damages, in an amount to be determined at trial, for losses caused as a direct and proximate result of the Trustee's negligent breaches of the PSAs, to the extent that reimbursement for historical shortfalls in interest paid to the IO senior certificates as Class Unpaid Interest Amounts is insufficient to reimburse Silian for all historical shortfalls.

## PRAYER FOR RELIEF

**WHEREFORE**, Silian respectfully requests judgment against the Trustee as follows:

A. Declaring that the Trustee is obligated to calculate the Mortgage Rate used to determine the Class Optimal Interest Distribution Amount for the IO senior certificates issued by the Covered Trusts using the Original Rate and not the Modified Rate;

B. Declaring that the Trustee is obligated to treat historical shortfalls in interest paid to the IO senior certificates as Class Unpaid Interest Amounts and must distribute those Class Unpaid Interest Amounts to the IO senior certificates out of future cash flows to the Covered Trusts in accordance with the distribution waterfall in the PSAs;

C. Awarding damages to Silian in an amount to be proven at trial, to the extent that reimbursement for historical shortfalls in interest paid to the IO senior certificates as Class Unpaid Interest Amounts is insufficient to reimburse Silian for all historical shortfalls, along with pre-judgment and post-judgment interest on such amount;

D. Granting such other additional and different relief as the Court may deem just and proper.

Dated: New York, New York
      December 14, 2018

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: _____

    Jonathan E. Pickhardt
    Maaren Shah
    Blair A. Adams
    Neil T. Phillips

    51 Madison Avenue, 22nd Floor
    New York, New York 10010
    (212) 849-7000
    jonpickhardt@quinnemanuel.com
    maarenshah@quinnemanuel.com
    blairadams@quinnemanuel.com
    neilphillips@quinnemanuel.com

    *Attorneys for Plaintiff Silian Ventures LLC*

# APPENDIX A

## APPENDIX A
### List of Covered Trusts

| #   |                    | #    |                    | #    |                    |
|-----|--------------------|------|--------------------|------|--------------------|
| 1.  | CWALT 2007-J2      | 36.  | CWALT 2006-12CB    | 71.  | CWALT 2004-J6      |
| 2.  | CWALT 2006-16CB    | 37.  | CWALT 2006-7CB     | 72.  | CWALT 2004-J8      |
| 3.  | CWALT 2006-15CB    | 38.  | CWALT 2006-13T1    | 73.  | CWALT 2005-J1      |
| 4.  | CWALT 2006-14CB    | 39.  | CWHL 2006-10       | 74.  | CWALT 2005-85CB    |
| 5.  | CWALT 2006-J3      | 40.  | CWALT 2006-J5      | 75.  | CWALT 2005-86CB    |
| 6.  | CWALT 2006-17T1    | 41.  | CWHL 2006-8        | 76.  | CWALT 2005-80CB    |
| 7.  | CWALT 2006-24CB    | 42.  | CWHL 2007-1        | 77.  | CWALT 2005-83CB    |
| 8.  | CWALT 2006-30T1    | 43.  | CWHL 2006-16       | 78.  | CWALT 2006-J1      |
| 9.  | CWALT 2006-36T2    | 44.  | CWHL 2006-17       | 79.  | CWALT 2006-2CB     |
| 10. | CWALT 2007-7T2     | 45.  | CWHL 2007-13       | 80.  | CWALT 2006-8T1     |
| 11. | CWALT 2006-18CB    | 46.  | CWHL 2007-12       | 81.  | CWALT 2006-5T2     |
| 12. | CWALT 2006-21CB    | 47.  | CWHL 2007-15       | 82.  | CWALT 2006-4CB     |
| 13. | CWALT 2006-46      | 48.  | CWHL 2007-21       | 83.  | CWALT 2006-6CB     |
| 14. | CWALT 2007-18CB    | 49.  | CWALT 2007-8CB     | 84.  | CWALT 2006-J2      |
| 15. | CWALT 2007-25      | 50.  | CWALT 2007-11T1    | 85.  | CWALT 2006-9T1     |
| 16. | CWALT 2007-16CB    | 51.  | CWALT 2007-9T1     | 86.  | CWHL 2005-J2       |
| 17. | CWHL 2007-18       | 52.  | CWALT 2007-12T1    | 87.  | CWHL 2007-J1       |
| 18. | CWHL 2007-17       | 53.  | CWALT 2007-13      | 88.  | CWHL 2006-J4       |
| 19. | CWHL 2007-11       | 54.  | CWALT 2007-19      | 89.  | CWALT 2006-31CB    |
| 20. | CWHL 2007-16       | 55.  | CWALT 2007-22      | 90.  | CWALT 2006-40T1    |
| 21. | CWHL 2007-19       | 56.  | CWALT 2007-15CB    | 91.  | CWALT 2006-42      |
| 22. | CWHL 2007-20       | 57.  | CWALT 2007-23CB    | 92.  | CWALT 2006-41CB    |
| 23. | CWHL 2007-4        | 58.  | CWALT 2007-21CB    | 93.  | CWALT 2006-43CB    |
| 24. | CWHL 2007-7        | 59.  | CWALT 2007-24      | 94.  | CWALT 2007-2CB     |
| 25. | CWHL 2007-5        | 60.  | CWALT 2007-17CB    | 95.  | CWALT 2006-45T1    |
| 26. | CWHL 2007-9        | 61.  | CWALT 2007-20      | 96.  | CWALT 2007-J1      |
| 27. | CWHL 2008-1        | 62.  | CWHL 2006-11       | 97.  | CWALT 2007-3T1     |
| 28. | CWHL 2007-8        | 63.  | CWHL 2006-J3       | 98.  | CWALT 2007-6       |
| 29. | CWHL 2007-10       | 64.  | CWHL 2007-6        | 99.  | CWALT 2007-14T2    |
| 30. | CWALT 2004-J10     | 65.  | CWHL 2006-21       | 100. | CWALT 2007-5CB     |
| 31. | CWALT 2005-J3      | 66.  | CWHL 2006-13       | 101. | CWALT 2005-67CB    |
| 32. | CWALT 2005-J7      | 67.  | CWHL 2006-18       | 102. | CWALT 2005-74T1    |
| 33. | CWALT 2005-J8      | 68.  | CWHL 2006-19       | 103. | CWALT 2005-J14     |
| 34. | CWALT 2005-J9      | 69.  | CWHL 2007-2        | 104. | CWALT 2005-J11     |
| 35. | CWALT 2006-11CB    | 70.  | CWALT 2004-J2      | 105. | CWALT 2005-73CB    |

| | |
|---|---|
| 106. | CWALT 2005-60T1 |
| 107. | CWALT 2005-57CB |
| 108. | CWALT 2005-65CB |
| 109. | CWALT 2005-79CB |
| 110. | CWALT 2005-77T1 |
| 111. | CWHL 2004-J7 |
| 112. | CWHL 2004-J5 |
| 113. | CWALT 2003-J3 |
| 114. | CWHL 2003-J15 |
| 115. | CWHL 2004-J1 |
| 116. | CWHL 2004-J2 |
| 117. | CWHL 2004-J3 |
| 118. | CWHL 2004-J6 |
| 119. | CWHL 2005-J3 |
| 120. | CWHL 2004-J8 |
| 121. | CWHL 2004-J9 |
| 122. | CWALT 2006-20CB |
| 123. | CWALT 2006-29T1 |
| 124. | CWALT 2006-19CB |
| 125. | CWALT 2006-23CB |
| 126. | CWALT 2006-28CB |
| 127. | CWALT 2006-25CB |
| 128. | CWALT 2006-26CB |
| 129. | CWALT 2006-32CB |
| 130. | CWALT 2006-27CB |
| 131. | CWALT 2006-34 |
| 132. | CWALT 2006-33CB |
| 133. | CWALT 2006-35CB |
| 134. | CWALT 2007-4CB |
| 135. | CWALT 2006-39CB |
| 136. | CWALT 2005-70CB |
| 137. | CWALT 2005-64CB |
| 138. | CWALT 2005-J10 |
| 139. | CWALT 2005-J13 |
| 140. | CWALT 2005-75CB |
| 141. | CWHL 2006-J2 |
| 142. | CWHL 2006-6 |
| 143. | CWHL 2005-27 |

| | |
|---|---|
| 144. | CWHL 2005-J4 |
| 145. | CWHL 2005-30 |
| 146. | CWHL 2006-1 |
| 147. | CWHL 2006-J1 |
| 148. | CWHL 2006-9 |
| 149. | CWHL 2003-J3 |
| 150. | CWALT 2003-J2 |
| 151. | CWHL 2003-J8 |
| 152. | CWALT 2006-J4 |
| 153. | CWALT 2006-J6 |
| 154. | CWALT 2006-J7 |
| 155. | CWALT 2007-1T1 |
| 156. | CWALT 2005-1CB |

# APPENDIX B

**APPENDIX B**
**Glossary Of Defined Terms Used In The Complaint**

**Adjusted Net Mortgage Rate** ...............................(Defined at Compl. ¶ 33.)  PSA art. I, at I-1.

As to each Mortgage Loan, and at any time, the per annum rate equal to the Mortgage Rate less the sum of the Trustee Fee Rate and the Master Servicing Fee Rate.  For purposes of determining whether any Substitute Mortgage Loan is a Discount Mortgage Loan or a Non-Discount Mortgage Loan and for purposes of calculating the applicable PO Percentage and the applicable Non-PO Percentage, each Substitute Mortgage Loan shall be deemed to have an Adjusted Net Mortgage Rate equal to the Adjusted Net Mortgage Rate of the Deleted Mortgage Loan for which it is substituted.

**Class Interest Shortfall** ........................................(Defined at Compl. ¶ 53.)  PSA art. I, at I-6.

As to any Distribution Date and Class, the amount by which the amount described in clause (i) of the definition of Class Optimal Interest Distribution Amount for such Class exceeds the amount of interest actually distributed on such Class on such Distribution Date pursuant to such clause (i).

**Class Optimal Interest Distribution Amount** .....(Defined at Compl. ¶ 25.)  PSA art. I, at I-6.

With respect to any Distribution Date and interest bearing Class or, with respect to any interest-bearing Component, the sum of (i) one month's interest accrued during the related Interest Accrual Period at the Pass-Through Rate for such Class on the related Class Certificate Balance, Component Balance, Notional Amount or Component Notional Amount, as applicable, immediately prior to such Distribution Date, subject to reduction as provided in Section 4.02(d) and (ii) any Class Unpaid Interest Amounts for such Class or Component.

**Class Unpaid Interest Amounts** ...........................(Defined at Compl. ¶ 53.)  PSA art. I, at I-6.

As to any Distribution Date and Class of interest bearing Certificates, the amount by which the aggregate Class Interest Shortfalls for such Class on prior Distribution Dates exceeds the amount distributed on such Class on prior Distribution Dates pursuant to clause (ii) of the definition of Class Optimal Interest Distribution Amount.

**Debt Service Reduction** ........................................(Defined at Compl. ¶ 49.)  PSA art. I, at I-9.

With respect to any Mortgage Loan, a reduction by a court of competent jurisdiction in a proceeding under the Bankruptcy Code in the Scheduled Payment for such Mortgage Loan which became final and non-appealable, except such a reduction resulting from a Deficient Valuation or any reduction that results in a permanent forgiveness of principal.

**Discount Mortgage Loan** ....................................(Defined at Compl. ¶ 32.)  PSA art. I, at I-10.

Any Mortgage Loan in a Loan Group with an Adjusted Net Mortgage Rate that is less than the Required Coupon for that Loan Group.

**IO** ................................................................................................. (Defined at Compl. ¶ 1.)

Interest-only certificates.  Holders of IO certificates receive interest payments but not principal payments.

**Master Servicing Fee Rate**…………………(Defined at Compl. ¶ 33 n.5.) PSA art. I, at I-15.

With respect to each Mortgage Loan, 0.25% per annum.

**Modified Rate** ...................................................................................... (Defined at Compl. ¶ 4.)

An interest rate adjusted for forbearance agreements or other modifications to the underlying mortgage loans that occurred after the Covered Trusts were issued.

**Mortgage Note** ...................................................(Defined at Compl. ¶ 33.) PSA art. I, at I-17.

The original executed note or other evidence of indebtedness evidencing the indebtedness of a Mortgagor under a Mortgage Loan.

**Mortgage Rate** ...................................................(Defined at Compl. ¶ 33.) PSA art. I, at I-17.

The annual rate of interest borne by a Mortgage Note from time to time, net of any interest premium charged by the mortgagee to obtain or maintain any Primary Insurance Policy.

**Non-Discount Mortgage Loan** ...........................(Defined at Compl. ¶ 26.) PSA art. I, at I-17.

Any Mortgage Loan in a Loan Group with an Adjusted Net Mortgage Rate that is greater than or equal to the Required Coupon for such Loan Group.

**Non-PO Formula Principal Amount**…...(Defined at Compl. ¶ 43 n.7) PSA art. I, at I-17–18.

As to any Distribution Date and Loan Group, the sum of (i) the sum of the applicable Non-PO Percentage of (a) the principal portion of each Scheduled Payment (without giving effect to any reductions thereof caused by any Debt Service Reductions or Deficient Valuations) due on each Mortgage Loan in the related Loan Group on the related Due Date, (b) the Stated Principal Balance of each Mortgage Loan in the related Loan Group that was repurchased by a Seller or purchased by the Master Servicer pursuant to this Agreement as of such Distribution Date, (c) the Substitution Adjustment Amount in connection with any Deleted Mortgage Loan in such Loan Group received with respect to such Distribution Date, (d) any Insurance Proceeds or Liquidation Proceeds allocable to recoveries of principal of Mortgage Loans in the related Loan Group that are not yet Liquidated Mortgage Loans received during the calendar month preceding the month of such Distribution Date, (e) with respect to each Mortgage Loan in a Loan Group that became a Liquidated Mortgage Loan during the calendar month preceding the month of such Distribution Date, the amount of the Liquidation Proceeds allocable to principal received during the calendar month preceding the month of such Distribution Date with respect to such Mortgage Loan and (f) all Principal Prepayments for such Loan Group received during the related Prepayment Period, (ii) (A) any Subsequent Recoveries received on the Mortgage Loans in that Loan Group during the

calendar month preceding the month of such Distribution Date, or (B) with respect to Subsequent Recoveries attributable to a Discount Mortgage Loan in such Loan Group which incurred a Realized Loss after the Senior Credit Support Depletion Date, the Non-PO Percentage of any such Subsequent Recoveries received during the calendar month preceding the month of such Distribution Date, and (iii) with respect to Loan Group 1, on the last Funding Period Distribution Date, the amounts remaining in the Pre-funding Account other than the Remaining PO Pre-funded Amount.

**Notional Amount** .........................................(Defined at Compl. ¶ 27.)  PSA art. I, at I-18–19.

. . . . With respect to any Distribution Date and the Class 1-X Certificates, an amount equal to the aggregate of the Stated Principal Balances of the Non-Discount Mortgage Loans in Loan Group 1 as of the Due Date in the preceding calendar month (after giving effect to Principal Prepayments received in the Prepayment Period related to such Due Date).

**Original Rate** ..................................................................................... (Defined at Compl. ¶ 3.)

The unmodified rate of interest that appeared in the original mortgage note for the mortgage loan.

**Pass-Through Rate**.............................................(Defined at Compl. ¶ 26.)  PSA art. I, at I-20.

For any interest bearing Class of Certificates or Component, the per annum rate set forth or calculated in the manner described in the Preliminary Statement.

**PO**……………………………………………………………………….(Defined at Compl. ¶ 42.)
Principal-only certificates.  Holders of PO certificates receive principal payments but not interest payments.

**PO Formula Principal Amount**…………(Defined at Compl. ¶ 43 n.7) PSA art. I, at I-22–23.
As to any Distribution Date and related Class PO Component, the sum of (i) the sum of the applicable PO Percentage of (a) the principal portion of each Scheduled Payment (without giving effect to any reductions thereof caused by any Debt Service Reductions or Deficient Valuations) due on each Mortgage Loan in the related Loan Group on the related Due Date, (b) the Stated Principal Balance of each Mortgage Loan in the related Loan Group that was repurchased by a Seller or purchased by the Master Servicer pursuant to this Agreement as of such Distribution Date, (c) the Substitution Adjustment Amount in connection with any Deleted Mortgage Loan in the related Loan Group received with respect to such Distribution Date, (d) any Insurance Proceeds or Liquidation Proceeds allocable to recoveries of principal of Mortgage Loans in the related Loan Group that are not yet Liquidated Mortgage Loans received during the calendar month preceding the month of such Distribution Date, (e) with respect to each Mortgage Loan in the related Loan Group that became a Liquidated Mortgage Loan during the calendar month preceding the month of such Distribution Date, the amount of Liquidation Proceeds allocable to principal received with respect to such Mortgage Loan during the calendar month preceding the month of such Distribution Date with respect to such Mortgage Loan, and (f) all Principal Prepayments with respect to the Mortgage

Loans in the related Loan Group received during the related Prepayment Period, (ii) with respect to Subsequent Recoveries attributable to a Discount Mortgage Loan in the related Loan Group which incurred a Realized Loss after the Senior Credit Support Depletion Date, the PO Percentage of any such Subsequent Recoveries on the Mortgage Loans in such Loan Group received during the calendar month preceding the month of such Distribution Date, and (iii) with respect to Loan Group 1, on the last Funding Period Distribution Date the related Remaining PO Pre-funded Amount.

**PO Percentage**………………………………..(Defined at Compl. ¶ 43 n.7) PSA art. I, at I-23. As to any Discount Mortgage Loan in a Loan Group, a fraction (expressed as a percentage) the numerator of which is the excess of the Required Coupon for such Loan Group over the Adjusted Net Mortgage Rate of such Discount Mortgage Loan and the denominator of which is such Required Coupon. As to any Non-Discount Mortgage Loan, 0%.

**PSA** ............................................................................... (Defined at Compl. ¶ 1.) Pooling and servicing agreement.  Among other things, a pooling and serving agreement sets forth the terms of payment for each class of certificates and governs the Trustee's rights and obligations.

**RAST Trusts** .................................................................. (Defined at Compl. ¶ 58.) Residential Asset Securitization Trust, a shelf of RMBS trusts with substantively similar definitions for the relevant terms, for which Deutsche Bank acted as trustee and employed the approach for determining the Mortgage Rate advocated by Plaintiff Silian in this action.

**Rate Modifications** ........................................................ (Defined at Compl. ¶ 4.) Forbearance agreements or other modifications to the underlying mortgage loans that occurred after the Covered Trusts were issued

**Realized Loss** ...............................................(Defined at Compl. ¶ 45.)  PSA art. I, at I-25–26. With respect to each Liquidated Mortgage Loan, an amount (not less than zero or more than the Stated Principal Balance of the Mortgage Loan) as of the date of such liquidation, equal to (i) the Stated Principal Balance of the Liquidated Mortgage Loan as of the date of such liquidation, plus (ii) interest at the Adjusted Net Mortgage Rate from the Due Date as to which interest was last paid or advanced (and not reimbursed) to Certificateholders up to the Due Date in the month in which Liquidation Proceeds are required to be distributed on the Stated Principal Balance of such Liquidated Mortgage Loan from time to time, minus (iii) the Liquidation Proceeds, if any, received during the month in which such liquidation occurred, to the extent applied as recoveries of interest at the Adjusted Net Mortgage Rate and to principal of the Liquidated Mortgage Loan. . . . .

**Relief Act**...........................................................(Defined at Compl. ¶ 49.)  PSA art. I, at I-26. The Servicemembers Civil Relief Act.

B-4

**Relief Act Reduction** ...........................................(Defined at Compl. ¶ 49.)  PSA art. I, at I-26.

> With respect to any Distribution Date and any Mortgage Loan as to which there has been a reduction in the amount of interest collectible thereon for the most recently ended calendar month as a result of the application of the Relief Act or any similar state laws, the amount, if any, by which (i) interest collectible on such Mortgage Loan for the most recently ended calendar month is less than (ii) interest accrued thereon for such month pursuant to the Mortgage Note.

**Required Coupon** ...............................................(Defined at Compl. ¶ 26.)  PSA art. I, at I-28.

> With respect to the Mortgage Loans in Loan Group 1, 5.50% per annum and with respect to the Mortgage Loans in Loan Group 2, 5.75% per annum.

**RMBS** ..................................................................... (Defined at Compl. preliminary statement.)

> Residential mortgage-backed securities.

**Senior Certificates** ............... (Defined at Compl. ¶ 22.)  PSA Preliminary Statement, at 12–13.

> The Group 1 Senior Certificates and Group 2 Senior Certificates.  The Group 1 Senior Certificates include the Class 1-X Certificates used as an example throughout the Complaint.

**Stated Principal Balance**....................................(Defined at Compl. ¶ 27.)  PSA art. I, at I-31.

> As to any Mortgage Loan and Due Date, the unpaid principal balance of such Mortgage Loan as of such Due Date, as specified in the amortization schedule at the time relating thereto (before any adjustment to such amortization schedule by reason of any moratorium or similar waiver or grace period) after giving effect to the sum of: (i) any previous partial Principal Prepayments and the payment of principal due on such Due Date, irrespective of any delinquency in payment by the related Mortgagor, and (ii) Liquidation Proceeds allocable to principal (other than with respect to any Liquidated Mortgage Loan) received in the prior calendar month and Principal Prepayments received through the last day of the related Prepayment Period, in each case, with respect to that Mortgage Loan.

**Subordinated Certificates**......(Defined at Compl. ¶ 44 n.9) PSA Preliminary Statement at 13.

> Class M, Class B-1, Class B-2, Class B-3, Class B-4 and Class B-5 Certificates.

**Subsequent Recoveries**……………………..(Defined at Compl. ¶ 47 n.11) PSA art. I, at I-32.
> As to any Distribution Date, with respect to a Liquidated Mortgage Loan that resulted in a Realized Loss in a prior calendar month, unexpected amounts received by the Master Servicer (net of any related expenses permitted to be reimbursed pursuant to Section 3.08) specifically related to such Liquidated Mortgage Loan.

**Trustee Fee Rate**……………………………(Defined at Compl. ¶ 33 n.5.) PSA art. I, at I-34.
> With respect to each Mortgage Loan, 0.009% per annum.